IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA

| | | |
|---|---|---|
| Phoenix Ridge GA TC, LP | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | [Case Number] |
| v. | ) | |
| | ) | |
| City of Atlanta, Georgia, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Phoenix Ridge GA TC, LP ("Phoenix Ridge") and for its

complaint against the City of Atlanta, Georgia (the "City") states as follows:

### I.      Introduction

1.      Phoenix Ridge is the owner of three parcels of property in Atlanta,

Georgia on which 396 affordable housing units are situated. The parcels are divided

between Forest Cove North and Forest Cove South, but are commonly referred to as

Forest Cove. Forest Cove is located in the Thomasville Heights neighborhood in

Southeast Atlanta, a stone's throw from the Georgia state capitol and approximately

two miles from the Atlanta BeltLine. Until recently, Phoenix Ridge operated Forest

Cove under a project-based Section 8 Housing Assistance Payments ("HAP")

contract with the United States Department of Housing and Urban Development

("HUD"). Forest Cove derived its value from the HAP contract that ran with the property.

2.     Phoenix Ridge and related entity, Millennia Housing Management, Ltd. LLC ("Millennia") have been unfairly painted as villains with respect to their involvement with Forest Cove. The City and various news outlets in Atlanta have cast Phoenix Ridge as a serial violator of various housing codes that sought to maintain the Forest Cove apartment homes as a nuisance in perpetuity. Nothing is further from the truth. Phoenix Ridge purchased Forest Cove in April 2021 with a singular goal – to improve the lives of the Forest Cove residents by closing on a preservation financing transaction that would have invested over $60 million in a complete, transformative rehabilitation of the apartment homes at Forest Cove and preserved 396 affordable housing units in Atlanta. Indeed, HUD supported Millennia's purchase of a portfolio of affordable housing projects around the country that had been operated by a company notorious for its neglect and disregard of properties because it knew of Millennia's track record of operating affordable housing projects and of its plan to close transactions on each of the properties in the portfolio to rehabilitate them.

3.     Unfortunately, Forest Cove was among the worst properties in the previous owner's portfolio, having been allowed to deteriorate for years under the

watch of the City of Atlanta and HUD. Rehabilitating Forest Cove to modernize each of its 396 apartment units to provide quality, affordable housing to the residents was therefore not an easy or quick task. Phoenix Ridge set out to achieve its goal even before finalizing its purchase of Forest Cove, and it had made significant strides towards closing a preservation transaction in the fall of 2021. Phoenix Ridge had been preliminarily approved to receive low-income housing tax credits, had lined up an equity investor, had identified a general contractor to begin construction, and had its application for construction permits approved by the City. In short, Forest Cove was on the precipice of being completely rebuilt to provide safe, quality, and affordable housing to its residents. Notably, Phoenix Ridge's plan for Forest Cove, and efforts to execute on that plan, was consistent with City of Atlanta Mayor Andre Dickens' stated vision[1] for developing affordable housing in Atlanta without displacement and maintaining affordable housing near the Atlanta BeltLine, an area Mayor Dickens has targeted for strategic development. But the City has strayed from Mayor Dickens' vision by not taking a collective approach to the redevelopment of Forest Cove and exalting its vision for the property over that of Phoenix Ridge's.

---

[1] Mayor Andre Dickens' plan for providing safe, quality, and affordable housing for Atlanta citizens can be accessed at https://www.atlantaga.gov/government/mayor-s-office/moving-atlanta-forward-agenda/quality-housing-for-everyone#:~:text=Affordable%20Housing%20Investments,are%20funded%20or%20under%20construction (last accessed October 3, 2023).

4.      Phoenix Ridge's plans were brought to a screeching halt by the City's inconsistent initiation of *in rem* proceedings seeking to demolish the property. The financing transaction that Phoenix Ridge was pursuing required the apartment units to be rehabilitated, not razed and rebuilt, so when the City of Atlanta Municipal Court issued an order in late December 2021 mandating that the properties be demolished, Phoenix Ridge's plans and previous work to rehabilitate Forest Cove were seemingly lost.

5.      Because Phoenix Ridge was unable to close the financing transaction, the future of Forest Cove and its residents was uncertain. Based on its belief that residents should not live in the existing conditions at Forest Cove, Phoenix Ridge agreed to cooperate with the City to relocate the residents while its appeal of the City of Atlanta Municipal Court's order was pending. As part of that agreement, the City agreed that once all the Forest Cove residents were relocated that it would seek to lift the demolition mandate and to support Phoenix Ridge's future efforts to reapply for low-income housing tax credits, complete its rehabilitation of Forest Cove, and allow the Forest Cove residents to return to the Thomasville Heights neighborhood. Indeed, after the last of the Forest Cove residents was relocated, Mayor Dickens proclaimed, "[w]e must now work with urgency to ensure these residents can return

4853-9835-0710.7

to a community that is safe, clean and thriving."[2] The City breached its agreement, as held by the Fulton County Superior Court on August 22, 2023, however, and refused to seek to lift the demolition order after the last Forest Cove resident moved off the property in late September 2022. A presentation prepared by the City during that time reveals the City's motives – the City wanted the Forest Cove apartments to be rebuilt, but it did not want it to be rehabilitated as Phoenix Ridge planned to do. A subsequent, comprehensive neighborhood plan for Thomasville Heights described the property on which Forest Cove sits as a "catalytic site" for the City's development plans based on its "critical location[], size of developable land and ability to catalyze further development in the neighborhood." By reneging on its contractual obligation, the City ensured that Phoenix Ridge would not be able to close a financing transaction to rehabilitate the property contrary to the City's vision for Forest Cove. The City's actions, in fact, resulted in Phoenix Ridge not being able to close a financing transaction and ultimately losing the HAP Contract. For the citizens of Atlanta, the City's actions have resulted in the prolonged loss of 396 affordable housing units and delayed the return of the Forest Cove residents to the

---

[2] Mayor Dickens' remarks can be found in an October 3, 2022, City of Atlanta press release, titled *Last Families Move from Forest Cove Under Mayor Dickens' $9.1M Relocation Plan*, available at https://www.atlantaga.gov/Home/Components/News/News/14374/672#!/ (last accessed October 3, 2023).

4853-9835-0710.7

Thomasville Heights neighborhood. Again, Phoenix Ridge's intention for Forest Cove, as evidenced by its actions, has always been to provide safe, quality, and affordable housing to the Forest Cove residents.

6.      Through its actions, the City has taken property from Phoenix Ridge by inverse condemnation without paying just compensation in violation of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I, Section 3, Paragraph 1 of the Georgia Constitution. Specifically, the City exceeded its police powers by seeking and obtaining an order to demolish property owned by Phoenix Ridge to abate a nuisance, despite previously approving the issuance of building permits that would have allowed Phoenix Ridge to perform a renovation of the property that would have abated any nuisance. As a result of the demolition order, Phoenix Ridge was unable to close on a preservation financing transaction to renovate Forest Cove, which ultimately resulted in HUD abating the Forest Cove HAP contract. Without the HAP contract in place, the value of Forest Cove is greatly diminished, and Phoenix Ridge is unable to operate the property for the purpose it purchased the property.

7.      After obtaining the demolition order, the City and Phoenix Ridge entered into a settlement agreement to expedite the relocation of the Forest Cove residents and lift the demolition order, so Phoenix Ridge could close a preservation

financing transaction and complete the rehabilitation of Forest Cove. Under the agreement, the City agreed to seek an order vacating the demolition order once all the Forest Cove residents were relocated. The City failed to satisfy its contractual obligation to seek to lift the demolition order after all the Forest Cove residents were relocated, blocking Phoenix Ridge from closing its preservation financing transaction.

## II.      Parties

8.      Phoenix Ridge GA TC, LP is a limited partnership organized under the laws of the State of Georgia with a principal place of business in Ohio.

9.      The City is a municipal corporation located in Georgia. Pursuant to Fed. R. Civ. P. 4(j)(2), the City can be served by delivering a copy of the complaint to its chief executive officer Mayor Andre Dickens at 55 Trinity Avenue, Suite 2400, Atlanta, Georgia 30303.

## III.     Jurisdiction and Venue

10.      This Court has jurisdiction pursuant to 28 USC § 1331 because this case presents a federal question. This Court has supplemental jurisdiction over Phoenix Ridge's state law claims pursuant to 28 USC § 1367.

11.     Venue is proper in this Court pursuant to 28 USC § 1391 because the Defendant City of Atlanta is located in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### IV.    Factual Background

### Forest Cove has been neglected for decades.

12.     The Forest Cove Apartments were built in the 1970s in the Thomasville Heights neighborhood of Atlanta.

13.     Forest Cove is unique among affordable housing projects because of the number of 3- and 4-bedroom units it has, which are ideal for low-income families.

14.     For at least a decade prior to Phoenix Ridge's purchase of the property, the Forest Cove Apartments had been neglected.

15.     Forest Cove's most recent owner, prior to Phoenix Ridge purchasing the property in April 2021, was GMF-Forest Cove, LLC ("GMF"), an affiliate of Global Ministries Foundation.

16.     GMF operated a portfolio of failing affordable housing projects around the country. Forest Cove was among the worst of the properties owned and operated by GMF.

4853-9835-0710.7

17.     In 2016, HUD sought to divest the beleaguered GMF of its portfolio of Section 8 housing projects. Millennia, a mission-based operator of affordable housing projects nationwide, learned about the sale of the GMF portfolio and inquired with HUD regarding a potential purchase of the GMF portfolio.[3] HUD was receptive to Millennia's purchase, and indeed HUD's senior leaders encouraged Millennia to purchase the portfolio.

18.     Millennia agreed to purchase the GMF portfolio in 2016, including Forest Cove, with the expectation that it would only purchase a particular property in the portfolio when it had a financing transaction in place that would use a mix of low-income housing tax credits ("LIHTC"), private allocation bonds, and private financing to preserve the property's affordable housing status. These financings are referred to as preservation transactions.

19.     When it agreed to purchase the GMF portfolio, Millennia did not intend on taking over management of the properties prior to closing on a preservation transaction for each property.

---

[3] Phoenix Ridge and Millennia are related entities, and the two entities are referred to interchangeably throughout.

### Millennia took over management of Forest Cove in 2017.

20.    Millennia took over management of Forest Cove prior to closing a preservation transaction in November 2017 because GMF's property management company abruptly walked off site.

21.    Upon taking over management of Forest Cove, Millennia made a capital contribution of $1,878,185 to cover a deficit in the operations account to make repairs and provide essential services for the property.

22.    Millennia did not purchase Forest Cove when it took over management. Instead, GMF remained the owner of Forest Cove.

23.    Millennia recognized the need to relocate the Forest Cove residents when it took over management of the property, and it began working towards structuring a preservation transaction that would include relocating the Forest Cove residents while the apartments were rehabilitated.

24.    In 2018, Millennia applied for 4% LIHTC and bond allocation financing from the Georgia Department of Community Affairs ("DCA").

25.    DCA preliminarily approved Millennia's application for funding, but the project would not fund until Millennia was positioned to close the preservation transaction.

26.     Coordinating the relocation of the Forest Cove residents was an important aspect of the preservation transaction.

27.     To relocate the Forest Cove residents, the owner of the property had to first obtain a waiver from DCA approving the temporary relocation. The responsibility to obtain a waiver thus fell on GMF.

28.     GMF refused to seek a waiver from DCA to allow the relocation of the Forest Cove Residents, thus blocking Millennia from closing on a preservation transaction and prolonging the rehabilitation of Forest Cove for the benefit of the residents.

**Millennia purchased Forest Cove in April 2021 prior to closing a preservation transaction to be able to start the relocation process.**

29.     GMF's refusal to allow the Forest Cove residents to be relocated was unacceptable to Millennia, so, on April 27, 2021, Phoenix Ridge purchased the property from GMF prior to closing the preservation transaction.

30.     Phoenix Ridge purchased Forest Cove for $38,840,000.

31.     To finance the transaction, Phoenix Ridge secured a bridge loan of $31 million from Red Stone and invested over $7.8 million in equity.

32.     Phoenix Ridge obtained an appraisal of Forest Cove around the time of the purchase that valued the property at $40,000,000.

33.    Forest Cove derived its value from the HAP contract that provided a rental subsidy for each of the property's occupied units. For each occupied unit, the owner of Forest Cove received a monthly payment from HUD.

34.    After purchasing Forest Cove, Millennia began coordinating the relocation of the residents under the Uniform Relocation Assistance and Real Property Acquisition Act ("URA"), 42 USC § 4601 *et seq*., which provides protections for persons displaced by federally funded projects.

35.    Millennia partnered with several community groups to create its relocation plan, including Open Doors, APD Urban Planning and Management, and Purpose Built Schools Atlanta.

36.    By the end of 2021, Millennia had already started to perfect on the relocation plan of the residents and invested hundreds of thousands of dollars towards its relocation efforts.

### By December 2021, the Preservation Transaction was at the Finish Line.

37.    By December 2021, after only owning Forest Cove for eight months, Phoenix Ridge was at the finish line of closing the preservation transaction.

38.    Millennia had secured permanent, private financing for the rehabilitation project from Red Stone and signed a letter of intent with US Bank to be the equity investor.

4853-9835-0710.7

39.     Millennia had identified and engaged Marous Brothers Construction as the general contractor for the construction of the rehabilitated apartments.

40.     Millennia had been preliminarily approved to receive the 4% LIHTC and bond allocation from DCA.

41.     Millennia had applied for building permits from the City of Atlanta for construction at Forest Cove, and the City had approved the building permits to be issued in September 2021.

42.     Millennia had received approval of zoning changes to support its rehabilitation efforts.

43.     Millennia had negotiated a ground lease agreement with The Housing Authority of the City of Atlanta, Georgia.

44.     Millennia had finalized a plan to relocate the Forest Cove residents consistent with the URA.

45.     Millennia had received a waiver from DCA on November 11, 2021, allowing it to begin relocating residents off site.

46.     A closing date was set with all interested parties for Mid-January 2022.

47.     As Jill Cromartie, DCA Division Director of Housing Finance & Development, put it on January 11, 2022, Millennia had pushed the preservation transaction "to the finish line."

48.     Millennia's preservation transaction was ultimately derailed, however, by the City of Atlanta initiating an in rem action against Forest Cove seeking to have the property demolished – a move wholly inconsistent with approving the issuance of building permits for the rehabilitation project.

## The City of Atlanta Initiated an In Rem Action to Declare Forest Cove a Nuisance in October 2021.

49.     On October 14, 2021, the City of Atlanta initiated an in rem proceeding in the Municipal Court of the City of Atlanta against Forest Cove pursuant to §§ 50 – 57 of the Atlanta Housing Code to abate a public nuisance at Forest Cove (the "In Rem Action").

50.     In the In Rem Action, the City asked the Municipal Court to declare Forest Cove a nuisance, require Phoenix Ridge/Millennia to secure the property and fully abate the nuisance, require Phoenix Ridge/Millennia to fully abate, repair, close, and/or demolish structures with fire damage, and to authorize the City to abate the nuisance if Phoenix Ridge/Millennia failed to do so.

51.     Filing the In Rem Action seeking a demolition order for Forest Cove was inconsistent with approving the issuance of building permits to Millennia for construction at Forest Cove. It was also unnecessary, as Millennia's rehabilitation of Forest Cove would have abated any nuisance on the property.

1.    <u>The problems at Forest Cove existed for years prior to when Millennia took over management or purchased the property.</u>

52.    Forest Cove had been neglected for at least a decade by its previous owners, by the City of Atlanta, and by HUD prior to Millennia purchasing the property in April 2021.

53.    Councilwoman Carla Smith, whose district included Forest Cove, testified at the hearing on the In Rem Action that GMF had "lots and lots and lots of problems," and that she had known about conditions at Forest Cove for thirty years and that "over the years it's gotten worse and it's very dangerous if you're not used to living in that area."

54.    Despite years of neglect at the hands of Forest Cove's previous owners, HUD did not act to divest GMF of its interest in Forest Cove until 2016, and the City did not file a complaint to declare the property a nuisance until October 2021.

55.    When the City filed the In Rem Action, Millennia was months, if not weeks, away from being able to relocate the Forest Cove residents and begin construction on a transformative rehabilitation project.

2.    <u>The hearing on the In Rem Action occurred in Fulton County Municipal Court in November 2021.</u>

56.    The hearing on the In Rem Action occurred on November 22, 2021, in Municipal Court.

57.    At the hearing, Millennia's Development Manager Seth Laubacher testified as to Millennia's plan to spend $150,000 renovating each of Forest Cove's units to complete a transformative rehabilitation of the property, at a total cost of nearly $60 million.

58.    Mr. Laubacher testified as to Millennia's plans to build a community center that would have included laundry facilities, a fitness center, a library, a computer lab. The community center also would have provided support services, such as after school programs for students living at Forest Cove.

59.    Mr. Laubacher testified that the relocation process had begun after Millennia received the waiver from DCA on November 11, 2021 and that construction could begin at Forest Cove once residents were relocated.

60.    Mr. Laubacher testified that the planned cost to relocate the Forest Cove residents was $9.1 million.

61.    At closing argument, Millennia's attorney asked the Municipal Court to deny the remedies sought by the City, so that Millennia could continue with the relocation of the residents and the rehabilitation of the property, as testified to by Millennia's witnesses.

62.    At closing argument, the City's attorney informed the court that the City was asking for "the ability to clean and close the property," and that "[i]f the

ownership is not going to take the responsibility the City is prepared to go all the way to demolishing this building."

63.     The Municipal Court judge responded to the City's request by stating, "I will say that at least for demolition the requirement that is needed to be, this is the case in several of our cases, the part with regards to the test that's required in the statute for demolition is not present. The evidence has not shown that."

> 3.     The Municipal Court issued an order in December 2021 finding that Forest Cove was a nuisance and ordering its demolition.

64.     On December 27, 2021, the Municipal Court issued its Final Order.

65.     The Municipal Court found that Forest Cove was a public nuisance.

66.     The Municipal Court concluded that the cost associated with rehabilitation was unreasonable, despite the testimony from Millennia's witnesses that Millennia had committed to investing the money in the property and despite the testimony that Millennia had taken significant steps towards closing the preservation transaction, and ordered the demolition of all the existing structures at Forest Cove, despite stating on the record at the conclusion of the hearing that there was insufficient evidence to order the demolition of Forest Cove.

67.     The Municipal Court ordered the Forest Cove residents to be relocated by March 1, 2022.

68.     The Municipal Court ordered the existing structures at Forest Cove to be demolished by September 12, 2022.

> 4.     Millennia appealed the Municipal Court's Final Order to the Fulton County Superior Court.

69.     On January 26, 2022, Millennia filed a timely notice of appeal with the Municipal Court, appealing the Final Order to the Fulton County Superior Court.

70.     Millennia subsequently filed its Petition of Notice of Appeal to Superior Court in Fulton County Superior Court on March 1, 2022.

71.     Under former O.C.G.A. § 5-3-7, Millennia's appeal had a supersedeas effect on the Municipal Court's Final Order, pending a *de novo* hearing by the Fulton County Superior Court. Millennia voluntarily dismissed the action in Fulton County Superior Court on September 29, 2023 pursuant to O.C.G.A. § 9-11-41(a)(1)(A).

**The Final Order Prevented Millennia from Closing a Preservation Transaction.**

72.     On January 11, 2022, DCA informed Millennia that it would not allocate financial resources for improvements to Forest Cove citing the limitations of construction activities placed on the property by the Final Order.

73.     Without the LIHTC and bond allocation from DCA, Millennia could not close a preservation transaction.

74.     As long as Forest Cove was subject to a demolition order, DCA would not select Millennia's application to receive funding.

75.     With the preservation transaction on hold, Millennia did not have a financial incentive to relocate the Forest Cove residents, nor did it have the capital to do so.

76.     Millennia nevertheless remained interested in relocating the residents and reviving a preservation transaction.

77.     Relocating the Forest Cove residents also remained a top priority for the City.

### Phoenix Ridge and the City Entered a Cooperation and Settlement Agreement to Expedite Relocation of the Forest Cove Residents Prior to Resolution of Phoenix Ridge's Appeal of the Final Order.

78.     On or around March 31, 2022, the City and Phoenix Ridge entered a Cooperation and Settlement Agreement (the "Settlement Agreement").

79.     The Settlement Agreement was signed by Mayor Andre Dickens on behalf of the City.

80.     The Settlement Agreement was signed by Frank Sinito, as the Manager of the general partner of Phoenix Ridge.

81.     In the fourth whereas clause of the Settlement Agreement, the parties stated that they had "reached a mutually acceptable resolution to resolve the Appeal and to expedite the relocation of the residents of Forest Cove."

82.     In the fifth whereas clause of the Settlement Agreement, the parties stated that "Owner has developed a plan for the rehabilitation of the Property, which it contends would negate the need for its demolition, and to exercise its best efforts to obtain the financing for this effort."

83.     In Section 1(a) of the Settlement Agreement, the parties agreed that once all of the residents were relocated from Forest Cove, the parties would seek a consent order from the Fulton County Superior Court dismissing the appeal and vacating the demolition order.

84.     Specifically, Section 1(a) of the Settlement Agreement states, "The City acknowledges the pending Appeal, and the Parties agree to propose a joint consent order … which will be presented to the Fulton County Superior Court and both parties will advocate that the Consent Order be approved and entered by the Fulton County Superior Court. The Parties agree that the Consent Order will incorporate the terms of this Agreement and that the Parties will seek to have the mandate for the demolition of the Property vacated. Owner acknowledges that the

City will cooperate with the vacation of the demolition mandate after all rightful residents of Forest Cove have been relocated…."

85.    In Section 1(b) of the Settlement Agreement, the City acknowledged (1) the contracts Phoenix Ridge had entered into with APD Urban Planning and Management, LLC and Open Doors for the relocation of the residents and (2) that it had received a relocation budget from Phoenix Ridge.

86.    The City agreed to advance the funds necessary to relocate the residents from Forest Cove.

87.    Phoenix Ridge agreed to reimburse the City for the relocation costs within thirty days of the closing of the financing for the rehabilitation, the rebuild, or the sale of Forest Cove.

88.    In Section 4 of the Settlement Agreement, the City acknowledged that Phoenix Ridge intended to reapply for private activity bond volume cap and 4% LIHTC from DCA to fund a rehabilitation project.

89.    The City also stated in Section 4 of the Settlement Agreement that it "considers the rehabilitation of property within the Thomasville Heights community a priority."

     5.    <u>The City did not seek to vacate the demolition order following relocation of all the Forest Cove residents.</u>

90.    By October 1, 2022, all of the Forest Cove residents had been relocated.

91.     On October 3, 2022, Mayor Dickens issued a press release touting the relocation as "a historic milestone for the families of Forest Cove who have been left behind for too many years," and stating that "[w]e must now work with urgency to ensure these residents can return to a community that is safe, clean and thriving."

92.     As it related to the return of the residents to Forest Cove and the Thomasville Heights neighborhood, Mayor Dickens acknowledged the Settlement Agreement, stating "[u]nder an agreement that Mayor Dickens negotiated earlier this year, the complex will be rehabilitated to create safe, quality housing in Thomasville Heights to allow the residents to return to the neighborhood."

93.     After the Forest Cove residents had been relocated, Phoenix Ridge's attorney, Marvin Arrington, Jr., reached out to the City Attorney and Deputy Solicitor to coordinate filing the Consent Order to lift the demolition order and clear the path to approval of Millenia's renewed application to DCA for LIHTC and bond allocation funding.

94.     Mr. Arrington's entreaties to finalize the Consent Order were met with resistance by the City and the Mayor's office.

95.     Ultimately, the City chose not to sign the Consent Order.

96.     Instead of signing the Consent Order, Mayor Dickens wrote a letter to DCA Commission Christopher Nunn on October 14, 2022 voicing his support for

the rehabilitation of Forest Cove and Phoenix Ridge's renewed application for 4% LIHTC and bond allocation.

97.     In the October 14, 2022 letter, Mayor Dickens acknowledged that the demolition order was an impediment to DCA approving Phoenix Ridge's renewed application, but he asked Commissioner Nunn to ignore the order when assessing Phoenix Ridge's application.

98.     Mayor Dickens also admitted in the October 14, 2022 letter to Commissioner Nunn that the City was contractually obligated to seek to vacate the demolition order after all the Forest Cove residents were relocated: "The City agreed to advance relocation costs and cooperate with the Owner to propose a joint consent order (the "Consent Order") which would incorporate the terms of the [Settlement] Agreement and would be presented to the Superior Court of Fulton County pursuant to which the City and the Owner would seek to have the mandate for the demolition of the Property vacated after all the rightful residents of the Forest Cove Apartments have been relocated."

99.     Mr. Arrington forwarded the Mayor's letter to the City Attorney and Deputy Solicitor on October 14, 2022 and asked when Phoenix Ridge could expect the City to sign the Consent Order to lift the demolition order. The City Attorney

responded that it was her understanding that the Mayor's October 14, 2022 letter was in lieu of signing the Consent Order.

6.   Vacating the demolition order was critical to Phoenix Ridge obtaining LIHTC from DCA and maintaining the HAP contract.

100.   Vacating the demolition order was critical to Phoenix Ridge being selected by DCA to receive the 4% LIHTC and bond allocation necessary to close a preservation transaction on Forest Cove.

101.   Moreover, because the Section 8 HAP contract is project-based, vacating the demolition order was critical to preserving the HAP contract, because if the property to which it was attached were demolished, the contract would be lost.

7.   The Fulton County Superior Court found that the City breached the Cooperation and Settlement Agreement.

102.   On August 22, 2023, the Fulton County Superior Court held that the City breached the Settlement Agreement by not seeking to vacate the demolition order once the last rightful Forest Cove resident was relocated.

103.   The Fulton County Superior Court ordered the City to comply with the Cooperation and Settlement Agreement and directed the parties to submit a Consent Order seeking to vacate the demolition mandate and incorporating the terms of the Settlement Agreement.

**Millennia's Plan for Rehabilitating Forest Cove is Inconsistent with the City's Plan for the Redevelopment of the Thomasville Heights Neighborhood.**

104.   Upon information and belief, the City refused to present the Consent Order to the Fulton County Superior Court because it understood that as long as the demolition order was in place, Millennia would not be able to close a preservation transaction and proceed with its plan to rehabilitate Forest Cove.

105.   Millennia was committed to investing over $60 million in Forest Cove to complete the rehabilitation of the existing structures.

106.   The City, however, favored a redevelopment plan that would involve razing the existing structures and building new high-density, mixed income apartments.

107.   In September 2022, the City prepared a presentation titled, "Thomasville Heights Redevelopment – Creating a thriving, mixed-income community," which laid out the City's vision for how the Forest Cove property could be redeveloped as part of a larger redevelopment of the Thomasville Heights neighborhood.

108.   According to the City's presentation, Millennia's rehabilitation of Forest Cove would have resulted in obsolete structures and concentrated poverty,

whereas the City's plan would have delivered high-quality new construction and scattered the affordable housing units across multiple housing developments.

109.   A comprehensive neighborhood plan for Thomasville Heights prepared by APD Urban Planning and Management for the City of Atlanta in May 2023 describes Forest Cove North and South as "catalytic sites" "based upon their critical locations, size of developable land and ability to catalyze further development in the neighborhood." Under the City's plan, Forest Cove will be repurposed as high-density residential units and mixed-use commercial property along the McDonough Boulevard corridor in Thomasville Heights.

### DCA Denied Millennia's 2022 Application for the 4% LIHTC and Bond Allocation, and Millennia's Strategy Shifted from Redeveloping Forest Cove to Selling It.

110.   On March 10, 2023, DCA denied Millennia's renewed application for funding under the 2022 4% LIHTC/Private Activity Bond Round.

111.   Around the same time, a senior official at the City told Millennia that it would be best if it sold Forest Cove to a new developer.

112.   Millennia therefore shifted its focus from being able to close a preservation transaction itself to identifying a developer it could sell the property to that would be able to redevelop Forest Cove.

113.   Because the $38.8 million purchase price paid by Millennia less than two years earlier was driven by the HAP contract being in place, Millennia had to find a purchaser that would commit to preserving affordable housing at Forest Cove and maintaining the HAP contract.

### HUD Abated the HAP Contract.

114.   On March 23, 2023, Millennia contacted HUD to inform it that DCA had denied its application and that it would not be able to close a preservation transaction without the LIHTC and bond allocation funding.

115.   Millennia also proposed a plan to sell the property to a preservation-oriented buyer, with which it would share its due diligence, third party reporting, architectural plans, and environmental reports to streamline the purchaser closing a preservation transaction, and asked HUD to allow the HAP contract to run with the property and be available upon completion of the rehabilitation of Forest Cove.

116.   On April 27, 2023, HUD denied Millennia's proposal and informed it that it would move forward with abating the HAP contract.

117.   On June 30, 2023, HUD abated the HAP contract.

118.   Without the HAP contract in place, Forest Cove is worth significantly less than the $38.8 million Millennia paid for it, and the $40 million it was appraised at, in April 2021.

## V.    Causes of Action

## Count I - Violation of § 1983, Regulatory Taking, *Penn Central*

119.   Plaintiff hereby incorporates paragraphs 1-118 of this Complaint as though fully set forth herein.

120.   The City, acting through the Director of the Bureau of Code Compliance of the City of Atlanta, instituted proceedings under section 50, et seq., of the Atlanta Housing Code of 1987 and O.C.G.A. § 41-2-7, et seq., to obtain a demolition order for Forest Cove.

121.   It was inconsistent for the City to file the In Rem Action seeking to demolish Forest Cove to abate a public nuisance after approving the issuance of permits to Phoenix Ridge authorizing it to begin construction on a transformative rehabilitation project that would have abated any nuisances complained about in the In Rem Action.

122.   The City's decision to initiate proceedings to demolish Forest Cove, despite having approved the issuance of building permits, is a regulatory action that has significantly devalued Forest Cove and eviscerated Phoenix Ridge's investment-backed expectations for Forest Cove.

123.   Moreover, because the City had approved the issuance of building permits to Phoenix Ridge that would have resulted in any nuisance on the property

being abated, the City's in rem action against the property at Forest Cove was unnecessary.

124.   Phoenix Ridge purchased Forest Cove for $38,800,000 in April 2021, and Forest Cove was appraised at $40,000,000 at the time of purchase. Both of those valuations accounted for the HAP contract.

125.   Phoenix Ridge agreed to purchase Forest Cove at the behest of HUD to remediate GMF's long-running neglect of Forest Cove and improve the living conditions of the Forest Cove residents by rehabilitating the property. Phoenix Ridge agreed to do so because the HAP Contract ran with the Property, and it believed that it would be able to close a preservation transaction using 4% LIHTC/bond financing from DCA. But for the HAP Contract and the ability to close the preservation transaction, Phoenix Ridge would not have agreed to purchase the Property.

126.   In the fall of 2021, the key players had aligned for Millenia to close the preservation transaction. Phoenix Ridge had been approved for the 4% LIHTC tax credits by Georgia DCA, secured permanent financing, partnered with community groups to facilitate the temporary relocation of Forest Cove residents, and obtained the necessary permits from the City to begin its rehabilitation of Forest Cove.

127.   On October 14, 2021, the City filed its In Rem Action, citing myriad conditions which would have been, and were indeed set to be, abated by Phoenix

Ridge's imminent rehabilitation of the Property, including hazardous open and vacant units, damaged window screens, missing and damaged siding, severe overgrowth, junk vehicles, damaged windows, and accumulation of trash and debris. In its Complaint, the City sought, *inter alia*, to declare the property a nuisance, require the owners to close and immediately secure the Property and fully abate the nuisance, and require the owners to fully abate, repair, close, and/or demolish the *buildings with extensive fire damage*.

128.  At the November 22, 2021 hearing, Phoenix Ridge argued to the Municipal Court that any rehabilitation of the Property would be reasonably related to the Property's fair market value and asked the Court to allow it to continue with its plans to relocate Forest Cove residents and rehabilitate the Property. The City, on the other hand, represented to the Court that if Phoenix Ridge would not take responsibility for the Property, the City was prepared to proceed to demolition.

129.  At the November 22, 2021 hearing, the Court acknowledged that the City had not presented sufficient evidence to warrant demolishing the property. Nevertheless, in its December 27, 2021 Final Order, the Court ordered Forest Cove to be demolished in its entirety.

130.  As of December 27, 2021, Millennia had been working with DCA to get final sign off to begin its rehabilitation of the Property and only needed DCA to

issue a Letter of Determination, which DCA indicated it would issue at the beginning of 2022. Indeed, DCA's Division Director, Housing Finance & Development described the deal as being at the "finish line."

131.  After receiving a copy of the Final Order in early January 2022, however, DCA determined that it would not issue a Letter of Determination approving allocation of funds for Millennia to rehabilitate Forest Cove. In its January 11, 2022, letter denying Millennia's application for a Letter of Determination, DCA cited to the Court's demolition order as its reason for withholding funding.

132.  Despite the City and Phoenix Ridge agreeing that they would jointly seek a consent order vacating the demolition order once all the Forest Cove residents were relocated, the City refused to do so. As a result, the demolition order remained in place.

133.  DCA subsequently denied Millennia's applications for the 2022 4% Housing Tax Credit/Bond allocation on March 10, 2023, and HUD notified Millennia on April 27, 2023, that it would abate the HAP Contract.

134.  The City's conduct in seeking, and ultimately obtaining, a demolition order without first giving Phoenix Ridge an opportunity to abate the conditions on the Property pursuant to a preservation transaction that had been permitted by the City and was at the "finish line" rendered the Property nearly valueless to Phoenix

Ridge: it cannot obtain tax credits from DCA and it has lost the HAP Contracts that ran with the property.

135.   Moreover, by denying Phoenix Ridge the opportunity to rehabilitate the Property, the City exacerbated the shortage of affordable housing for low-income families in the City of Atlanta, rather than allowing Phoenix Ridge to proceed down the path of improving the housing conditions for such families.

136.   Thus, as a result of the City's regulatory action, the remaining value in the Property to Phoenix Ridge is *de minimis* and Phoenix Ridge's reasonable investment-backed expectations for the Property are sunk.

137.   The City pursued its inconsistent and unnecessary In Rem Action to block Phoenix Ridge's rehabilitation of Forest Cove and preserve its own vision for how the Forest Cove property should be redeveloped as part of a broader neighborhood plan for Thomasville Heights.

138.   The City's conduct thus amounts to a regulatory taking, for which Phoenix Ridge is entitled to receive just compensation under the Fifth Amendment of the United States, as made applicable to the States by the Fourteenth Amendment.

139.   The City's failure to pay just compensation for its regulatory taking of Phoenix Ridge's property is a violation of 42 USC § 1983.

4853-9835-0710.7

## <u>Count II - Inverse Condemnation Under Georgia State Law</u>

140.   Plaintiff hereby incorporates paragraphs 1-139 of this Complaint as though fully set forth herein.

141.   The Georgia Constitution prohibits the taking of private property for public purposes "without just and adequate compensation being first paid." Ga. Const. Art. I, § 3, ¶ I.

142.   When the City instituted in rem proceedings against the Property, asking the Municipal Court to declare it a nuisance and seeking its demolition, the City deprived Phoenix Ridge of the opportunity to abate the nuisance pursuant to the preservation transaction it had been pursuing for years to complete a $60 million rehabilitation of the property and cure any conditions which may have been deemed a nuisance.

143.   The City exceeded its police powers when it instituted in rem proceedings against the Property to declare it a nuisance and obtain a demolition order because doing so deprived Phoenix Ridge of the privilege to abate the putative nuisance in accordance with the previously approved permits.

144.   Moreover, because the City had approved the issuance of permits to Phoenix Ridge related to the preservation transaction, instituting the in rem

4853-9835-0710.7

proceedings is tantamount to an arbitrary revocation of the permits needed to rehabilitate the property and abate any putative nuisance.

145.   Because the City exceeded its police powers, the demolition order it obtained from the Municipal Court constituted a taking of Phoenix Ridge's property for which just and adequate compensation is owed to Phoenix Ridge.

146.   The City has not paid Phoenix Ridge just and adequate compensation for taking its property.

147.   Phoenix Ridge has been deprived of all valuable use of the Property based on the City's conduct, and it is entitled to just compensation under the Georgia constitution in an amount to be determined at trial.

## **Count III – Breach of Contract**

148.   Plaintiff hereby incorporates paragraphs 1-147 of this Complaint as though fully set forth herein.

149.   The Cooperation and Settlement Agreement between the City and Phoenix Ridge is a valid, binding contract.

150.   Under the terms of the Settlement Agreement, the City agreed to submit a joint consent order to the Fulton County Superior Court seeking to vacate the demolition order once all the Forest Cove residents had been relocated.

151.   All the Forest Cove residents were relocated by October 1, 2022.

152.    The City breached the Settlement Agreement by refusing to submit the joint consent order to the Fulton County Superior Court to vacate the demolition order after all the Forest Cove residents were relocated.

153.    The Fulton County Superior Court held on August 22, 2023 that the City's failure to seek to vacate the demolition order was a breach of the Settlement Agreement.

154.    As a result of the City's breach of the Settlement Agreement, Phoenix Ridge has been damaged. Specifically, it was unable to close on the preservation transaction because DCA denied its 2022 application for LIHTC and bond allocation funding. The damages Phoenix Ridge incurred as a direct result of the City's breach include, but are not limited to, a lost developer fee authorized under the DCA application in the amount of $7,000,000, cash flow from Forest Cove during the term of the LIHTC in the amount of $9,500,000, and management fees during the term of the LIHTC in the amount of $4,600,000.

## Count IV – Infringement of Vested Property Rights

155.    Plaintiff hereby incorporates paragraphs 1-154 of this Complaint as though fully set forth herein.

156.   Phoenix Ridge had a vested property right to develop Forest Cove pursuant to the building permit approved by the City, which involved rehabilitating the existing structures.

157.   The City infringed on Phoenix Ridge's vested property right by initiating the In Rem Action seeking to demolish existing structures on the property.

158.   As a result of the City's infringement of Phoenix Ridge's vested property rights, Phoenix Ridge has been damaged. Specifically, Phoenix Ridge was not able to rehabilitate Forest Cove as it expected to when it purchased the property in April 2021. As a result, Forest Cove has lost most of its initial $38,840,000 investment in the property. It has also lost the significant sums it spent pursuing a preservation transaction. Finally, it lost the opportunity to receive the fees and cash flow that it would have received had it been allowed to complete its rehabilitation of Forest Cove.

## Count V – Attorneys' Fees and Costs - O.C.G.A. § 13-6-11

159.   Plaintiff hereby incorporates paragraphs 1-158 of this Complaint as though fully set forth herein.

160.   The City breached its contractual obligation to seek to vacate the demolition order to block Phoenix Ridge's plans to rehabilitate Forest Cove because

the City favored its own plan for Forest Cove as part of a broader redevelopment plan for the Thomasville Heights neighborhood.

161.   The City was aware that if the demolition order remained in place, DCA would not approve Phoenix Ridge's renewed application for LIHTC and bond allocation funding.

162.   The City deliberately interfered with Phoenix Ridge's right as the owner of Forest Cove to determine how the property would be redeveloped, which has deprived Phoenix Ridge the value of the property and necessitated the instant action.

163.   The City has therefore acted in bad faith, been stubbornly litigious, and has caused Phoenix Ridge unnecessary trouble and expense, entitling Phoenix Ridge to an award of litigation expenses.

## VI.   Prayer for Relief

WHEREFORE, Phoenix Ridge demands and prays for the following relief:

1.   That the Court find that the City's actions constitute a regulatory taking of Forest Cove in violation of the Fifth Amendment of the United States Constitution, as made applicable to the States by the Fourteenth Amendment, and award Phoenix Ridge just compensation in an amount to be determined at trial;

2.    That the Court award Phoenix Ridge its attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) for vindicating its Constitutional right to just compensation;

3.    That the Court find that the City's actions constitute an inverse condemnation of Forest Cove in violation of Article I, Section 3, Paragraph 1 of the Georgia Constitution and award Phoenix Ridge just and adequate compensation in an amount to be determined at trial;

4.    That the Court enter judgment in favor of Phoenix Ridge on its breach of contact claim for damages in an amount to be determined at trial;

5.    That the Court award Phoenix Ridge its attorneys' fees and costs in pursuing this action pursuant to O.C.G.A. § 13-6-11 in an amount to be determined at trial; and

6.    Such other and further relief as the Court deems just and equitable.


Dated:        October 3, 2023              Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    _/s/ S. Derek Bauer_____

S. Derek Bauer
Georgia Bar No. 042537
Kurt E. Lentz
Georgia Bar No. 804355
Jarvarus A. Gresham
Georgia Bar No. 873933
1170 Peachtree Street
Suite 2400
Atlanta, GA  30309-7676
Telephone: 404.459.0050
Facsimile:  404.459.5734

*Attorneys for Phoenix Ridge GA
TC, LP*

4853-9835-0710.7

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated:       October 3, 2023                Respectfully submitted,

                                            **BAKER & HOSTETLER LLP**

                                            By:   _/s/ S. Derek Bauer_
                                                  S. Derek Bauer
                                                  Georgia Bar No. 042537
                                                  Kurt E. Lentz
                                                  Georgia Bar No. 804355
                                                  Jarvarus A. Gresham
                                                  Georgia Bar No. 873933
                                                  1170 Peachtree Street
                                                  Suite 2400
                                                  Atlanta, GA  30309-7676
                                                  Telephone: 404.459.0050
                                                  Facsimile:  404.459.5734

                                                  _Attorneys for Phoenix Ridge GA TC, LP_

4853-9835-0710.7