## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**PHOENIX RIDGE GA TC, LP,**

  **Plaintiff,**

**v.**

**CITY OF ATLANTA, GEORGIA,**

  **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:23-CV-4511-MHC**

## ORDER

This case comes before the Court on Plaintiff Phoenix Ridge GA TC, LP

("Phoenix Ridge")'s Motion for Reconsideration [Doc. 20] and Motion to Vacate

Judgment and for Leave to Amend Complaint [Doc. 21].

## I. BACKGROUND

On March 27, 2024, the Court entered an Order granting Defendant City of

Atlanta, Georgia ("the City")'s Motion to Dismiss Phoenix Ridge's Complaint for

failure to state a claim.  Mar. 27, 2024, Order ("Mar. 27 Order") [Doc. 16].  The

Court dismissed Phoenix Ridge's federal regulatory taking claim under 42 U.S.C.

§ 1983 and declined to exercise supplemental jurisdiction over the remaining state

law claims.  Id. at 25-27.  Phoenix Ridge challenges the Court's holding with

regard to its § 1983 claim, which the Court will briefly summarize.

The Court first outlined the elements a plaintiff must allege to successfully

bring a § 1983 claim against a city:

> "[T]o impose § 1983 liability on a municipality, a plaintiff must show:
> (1) that his constitutional rights were violated; (2) that the municipality
> had a custom or policy that constituted deliberate indifference to that
> constitutional right; and (3) that the policy or custom caused the
> violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)
> (citation omitted); see also Brown v. City of Fort Lauderdale, 923 F.2d
> 1474, 1479 (11th Cir. 1991) ("It is well established that a municipality
> may be held liable under § 1983 only when the deprivation at issue was
> undertaken pursuant to city 'custom' or 'policy,' and not simply on the
> basis of respondeat superior.").
>
> A plaintiff "has two methods by which to establish a [municipality's]
> policy: identify either (1) an officially promulgated policy or (2) an
> unofficial custom or practice of the [municipality] shown through the
> repeated acts of a final policymaker for the [municipality]." Grech v.
> Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003). Under the first
> method, "a single incident of unconstitutional activity" can establish
> municipal liability if the incident "was caused by an existing,
> unconstitutional municipal policy, which policy can be attributed to a
> municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S.
> 808, 823-24 (1985).

Id. at 13-14. The Court recognized that Phoenix Ridge's articulated theory of

liability depended on the first method of municipal liability, as Phoenix Ridge

argued in response to the Motion to Dismiss that two different City officials, the

City's Director of the Bureau of Code Compliance (the "Director") and Mayor

Andre Dickens (the "Mayor"), made decisions that amounted to City policies and

established municipal liability. Id. at 15 (citing Pl.'s Resp. in Opp'n to Def.'s Mot.

to Dismiss and Mem. of Law in Supp. ("Pl.'s Opp'n to Def.'s Mot.") [Doc. 14] at
8-10); see also Oden, LLC v. City of Rome, 707 F. App'x 584, 588 (11th Cir.
2017) ("[A]n action taken by a government official can constitute an official
'policy' giving rise to municipal liability if the official has 'final policymaking
authority' for the municipality.").

 The Court rejected Phoenix Ridge's argument that either of these individuals
were final policymakers based on the allegations in the Complaint, ruling that:
(1) the Director was not a final policymaker as to the decision to initiate the in rem
proceeding seeking to declare the Forest Cover Apartments a public nuisance; and
(2) the Mayor lacked final policymaking authority to unilaterally breach the March
31, 2022, Cooperation and Settlement Agreement ("Settlement Agreement") so as
to subject the City to liability for failure to sign the consent order. Mar. 27 Order
at 19-21, 23 (citing Settlement Agreement [Doc. 11-3]). As to the Director, the
Court ruled that a discretionary act to initiate an in rem proceeding has no
independent legal effect, and because the Municipal Court reviews the in rem
proceeding on its merits, the act of initiating the proceeding is not a final decision
without review. Id. at 19-21. And as to the Mayor, the Court ruled:

> The City Charter establishes that the Atlanta Mayor's authority to
> execute contracts is not unilateral but derived from the authority of the
> City Council. See Atlanta City Charter § 3-104(10) ("When authorized
> by the council, [the mayor] negotiate[s] deeds, bonds, contracts, and

3

other instruments and documents on behalf of the city and execute same after final approval by the council"); id. § 2-176 ("The mayor shall execute all contracts approved by the council not more than 90 days from the date of adoption of the ordinance or resolution authorizing the contract and shall indicate, in writing, to the president and members of the city council the reasons why the contract has not been executed."). The Atlanta City Council and Mayor must act in tandem according to the charter, which shows that Mayor Dickens lacks the requisite final policymaking authority to subject the City to liability under Section 1983 for breach of the Settlement Agreement.

Id. at 23-24 (citation omitted).

## II.    MOTION FOR RECONSIDERATION

In its Motion for Reconsideration, Phoenix Ridge argues that the Court erred in making the determinations that the Director and Mayor were not final policymakers as to the allegedly unlawful policies and decisions. Pl.'s Mem. of Law in Supp. of Mot. for Recons. ("Pl.'s Recons. Br.") [Doc. 20-1].[1]

### A.    Legal Standard

"The Court does not reconsider its orders as a matter of routine practice." Belmont Holdings Corp. v. SunTrust Banks, Inc., 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012) (citing LR 7.2E, NDGa.). Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]"

---

[1] Phoenix Ridge also asks the Court to vacate the March 27 Order and change its Order into a dismissal without prejudice so that Phoenix Ridge may amend its Complaint. Id. at 1, 10. This argument is the subject of a contemporaneously filed brief that the Court will consider below in Section III.

but only when "absolutely necessary." LR 7.2E, NDGa. Such absolute necessity

arises only when there is "(1) newly discovered evidence; (2) an intervening

development or change in controlling law; or (3) a need to correct a clear error of

law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003)

(citation omitted). A motion for reconsideration may not be used "to present the

court with arguments already heard and dismissed or to repackage familiar

arguments to test whether the court will change its mind." Id. at 1259. Nor may it

be used "to offer new legal theories or evidence that could have been presented in

conjunction with the previously filed motion or response, unless a reason is given

for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace

Comput. Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001). Finally, "[a] motion

for reconsideration is not an opportunity for the moving party . . . to instruct the

court on how the court 'could have done it better' the first time." Pres. Endangered

Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557,

1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996). "If a party presents a

motion for reconsideration under any of these circumstances, the motion must be

denied." Bryan, 246 F. Supp. 2d at 1259; see also Brogdon ex rel. Cline v. Nat'l

Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

**B.     Discussion**

Phoenix Ridge argues that, "[r]ather than applying the Eleventh Circuit's standard for pleading 'final policymaker' liability under section 1983, the Court engaged in the prohibited task of determining whether or not the Director of the Bureau of Code Compliance or the Mayor of the City of Atlanta wield final policymaking authority." Pl.'s Recons. Br. at 4-5. Phoenix Ridge also argues in the alternative that, if the Court is inclined to rule as a matter of law at the pleading stage on the final policymaker issue, the Court should take judicial notice of additional "positive local law" and reach a different conclusion. Id. at 5-9 (citing Atlanta City Charter §§ 3-303(f) and 3-104(11), Atlanta City Code § 2-404, Administrative Order 2022-02, City of Atlanta Ordinances 22-O-1316, 22-O-1546, and 23-O-1272, and a press release issued by the Mayor on October 26, 2022).

> **1.     Phoenix Ridge has failed to demonstrate that the Court erred by applying the wrong standard in determining that the Director and Mayor were not final policymakers.**

Phoenix Ridge argues that the Court's role at the motion to dismiss stage should have been limited to determining "whether plaintiff has alleged sufficient facts to withstand the City's motion to dismiss," i.e. whether the "City of Atlanta action caused it a constitutional injury." Id. at 4-5. Thus, Phoenix Ridge contends that the Court erred when it made the determination that the Director and Mayor

were not final policymakers acting on behalf of the City because that "is an evidentiary standard and not a pleading standard." Id. Phoenix Ridge stops short of specifically arguing that this Court is precluded from adjudicating the final policymaker issue on a motion to dismiss but essentially would have this Court hold as much.[2] Notwithstanding the fact that Phoenix Ridge never made this argument in response to the City's Motion to Dismiss,[3] Phoenix Ridge fails to

---

[2] Phoenix Ridge appears to soften its position in its reply brief, where it acknowledges that "it is within the province of the court to make [the final policymaker] determination" on a motion to dismiss. Phoenix Ridge's Reply in Supp. of Mot. for Recons. ("Pl.'s Recons. Reply") [Doc. 29] at 2. See also id. at 5 ("And Phoenix Ridge does not disagree that in certain instances, the final policymaker question can be determined through a motion to dismiss").

[3] In its response to the motion to dismiss, Phoenix Ridge did not argue that it was inappropriate for the Court to adjudicate whether the Director or the Mayor were final policymakers; to the contrary, in response to the City's Motion to Dismiss, it identified the Director and the Mayor as the policymakers responsible for initiating the in rem action and refusing to sign the consent order and argued that these two policymakers' decisions were the source of the City policy that violated Phoenix Ridge's constitutional rights. Compare Pl.'s Recons. Br. at 4-5, with Pl.'s Opp'n to Def.'s Mot. at 8-10 (arguing that Phoenix Ridge established municipal liability because the City "acted through officials with final policymaking authority" and explaining the basis of that authority). Phoenix Ridge has reversed course on reconsideration and now contends that it was error for the Court to consider the very argument it made. "[A] reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler, 202 F.R.D. at 675. Phoenix Ridge offers no explanation as to why it did not raise this issue in the underlying brief. For this reason alone, this reconsideration argument is without merit. See Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005)

identify a clear legal or factual error in the Court's analysis that merits

reconsideration.

Phoenix Ridge has not cited any legal authority that stands for the position

that a district court is prohibited from making a legal determination at the motion

to dismiss stage as to the scope of policy-making authority of specifically

identified individual municipal policymakers who specifically are alleged to have

caused constitutional violations.  The cases cited by Phoenix Ridge are

distinguishable and, at best, stand for the proposition that it was inappropriate for

the district courts to adjudicate the final policymaker issue on a motion to dismiss

under the specific circumstances alleged in those cases.

Phoenix Ridge cites Hoefling v. City of Miami for the proposition that

"identifying and proving that a final policymaker acted on behalf of a municipality

is an evidentiary standard, and not a pleading requirement."  Pl.'s Recons. Br. at 5

(quoting Hoefling v. City of Miami, 811 F.3d 1271, 1280 (11th Cir. 2016) (internal

---

(noting that a motion for reconsideration cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"); Lockard v. Equifax, Inc., 163 F.3d 1259, 1267 (11th Cir. 1998) ("Motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued."); Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir. 1990) ("A district court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation.").

citation and quotation omitted)).  In <u>Hoefling</u>, a mariner sued the city of Miami and

two marine patrol officers under Section 1983 for the alleged unlawful seizure and

destruction of his boat.  The district court dismissed the complaint for failure to

adequately allege municipal liability because the plaintiff "failed to identify the

City official who acted as the final policymaker." <u>Id.</u> at 1279.  The Eleventh

Circuit reversed the district court on this point, noting that there were "several

different ways of establishing municipal liability under § 1983," and that "not all

theories of municipal liability under § 1983 require (or depend on) a single final

policymaker." <u>Id.</u>  The Eleventh Circuit cited to specific factual allegations in the

complaint detailing multiple examples of the city's "cleanup program" involving

the "systematic roundup and destruction of ugly boats" on the part of "the City and

its marine patrol officers." <u>Id.</u> at 1280.  In light of allegations of a systematic

program violating constitutional rights by a potential multitude individuals, the

court held:

> Although Mr. Hoefling may ultimately have to identify (and provide
> proof concerning) a single final policymaker in order to survive
> summary judgment or prevail at trial, <u>see, e.g.</u>, <u>Grech v. Clayton Cnty.</u>,
> 335 F.3d 1326, 1329 (11th Cir. 2003), we do not think that he had to
> name that person in his complaint in order to survive a Rule 12(b)(6)
> motion.  All he needed to do was allege a policy, practice, or custom of
> the City which caused the seizure and destruction of his sailboat.  And
> that, as we detail below, he did.

Id. at 1280.  As such, Hoefling stands for the unremarkable position that a § 1983 complaint does not need to include allegations identifying a specific policymaker to support a regulatory taking claim where the plaintiff asserts multiple plausible theories of municipal liability, including allegations of multiple possible policymakers and a municipality's persistent and widespread unconstitutional custom or practice.  See id. at 1279.

In this case, Phoenix Ridge's Complaint is devoid of any allegations that the City engaged in any persistent or widespread custom or practice, nor does it contain any non-conclusory allegation that any constitutional violation was carried out by a policy implemented by the City.  Indeed, the word "policy" does not appear in the Complaint.  Possibly realizing this deficiency, and only in response to the City's motion to dismiss, Phoenix Ridge asserted its final policymaker theory of municipal liability in an attempt to save its Section 1983 claim from dismissal. The rationale of Hoefling does not apply where the § 1983 claim is based on a single theory of final policymaker liability and the Complaint alleges the identity of the specific policymakers.

Phoenix Ridge also cites Brown v. City of Fort Lauderdale for the proposition that the court's task at the motion to dismiss stage "is not to determine who, in fact, wields final policymaking authority but only to consider whether

plaintiff has alleged sufficient facts to withstand the city's motion to dismiss."

Pl.'s Recons. Br. at 5 (quoting Brown v. City of Fort Lauderdale, 923 F.2d 1474,

1480 (11th Cir. 1991).  In Brown, the plaintiff sued the city, the police chief, and

the city manager, alleging he was terminated from his job because of his race.

Brown, 923 F.2d at 1475.  The district court dismissed the case against the city

because there were no allegations of an official policy of the city.  Id. at 1477.  The

Eleventh Circuit reversed, noting that

> [i]n dismissing the claims against the city, the district court mistakenly
> understood Brown's complaint, at paragraph 14, to have admitted that
> the police department's employment policies were "fair and just" when
> the paragraph acknowledged only that there was no formal, written
> policy of discrimination.  Paragraph 14, in fact, alleged that those
> empowered to carry out the facially equitable written policies did
> discriminate.
>
> Thus, while the complaint explicitly negates a claim of municipal
> liability based on formally adopted municipal policies, we believe it
> does, in paragraph 14 and elsewhere, adequately allege facts that would
> permit the city to be held responsible for Brown's termination under
> either the policymaker or custom approaches to municipal liability.

Id. at 1480.  The Eleventh Circuit elaborated that "a municipal official who has

'final policymaking authority' in a certain area of the city's business may by his or

her action subject the government to § 1983 liability when the challenged action

falls within that authority," and noted that neither the pro se plaintiff nor the city's

lawyer briefed the individual policymaker theory of municipal liability.  Id.  The

Eleventh Circuit also noted that the "plaintiff's allegations against the police chief and city manager leave open the possibility of city liability based on the actions of a policymaker" and found that "[t]he record at this point suggests that at least Hoffman, and perhaps Cochran as well, wields the relevant authority." Id. The court remanded the case to the district court to decide the issue of municipal liability, stating that the appellate court's task was "not to determine who, in fact, wields final policymaking authority but only to consider whether plaintiff has alleged sufficient facts to withstand the city's motion to dismiss." Id. Far from holding that the final policymaker issue cannot be determined by a district court at the pleading stage, the Brown court simply noted that the final policymaker issue had not been briefed by the parties and remanded the case to the district court to decide the issue.

Here, the parties had ample opportunity to argue the final policymaker issue before this Court. Furthermore, Phoenix Ridge's allegations regarding the Director—who allegedly instituted the in rem proceedings, which was then adjudicated by the City of Atlanta Municipal Court, not the Director—and the Mayor—who was only authorized to act pursuant to the limited and reviewable

authority as provided by the Atlanta City Charter[4]—do not "leave open [any] possibility" that the city's liability could be based on their decisions. Id.

It is settled law "that whether a particular official has final policymaking authority for § 1983 purposes is a matter of state law," Owens v. Fulton Cnty., 877 F.2d 947, 950 (11th Cir. 1989), and this is "a legal question to be resolved by the trial judge before the case goes to the jury." Brown, 923 F.2d at 1480 n.10. Because "[t]his is a question for the courts rather than the jury to decide," the issue "is thus resolvable at the motion-to-dismiss stage." Vandiver v. Meriwether Cnty., 325 F. Supp. 3d 1321, 1329 (N.D. Ga. 2018). The final policymaker authority issue has been decided on motions to dismiss by numerous district courts in this Circuit. See, e.g., Baker v. City of Atlanta, 662 F. Supp. 3d 1308, 1320 (N.D. Ga. 2023) (granting the city defendant's motion to dismiss finding that the alleged decisionmaker did not have final decision making authority); Williams v. Augusta, No. CV 121-145, 2022 WL 3367520, at *8 (S.D. Ga. Aug. 15, 2022), appeal dismissed sub nom. Williams v. Consol. Gov't of Augusta, 22-13075-DD, 2022 WL 17588725 (11th Cir. Oct. 25, 2022) (granting a motion to dismiss a § 1983

---

[4] Although Phoenix Ridge directs the Court to other additional local ordinances and code sections, it fails to address the Court's holding as to Atlanta City Charter § 3-104(10), which unambiguously and explicitly provides that the authority of the Mayor to negotiate and enter into contracts is subject to final review by the City Council.

municipal liability claim and holding that the defendant (and alleged policymaker) "cannot be considered a final policymaker" as a matter of law); <u>Barthelemy v. City of Atlanta</u>, No. 1:18-CV-04043-TWT-CMS, 2019 WL 13268614, at *5 (N.D. Ga. Mar. 25, 2019), <u>R&R adopted</u>, No. 1:18-CV-4043-TWT, 2019 WL 13268607 (N.D. Ga. Aug. 6, 2019) (granting a motion to dismiss a § 1983 municipal liability claim and holding that, although the complaint alleged that defendants were final policymakers, there were no factual allegations to support an inference that either defendant possessed final authority to establish municipal policy with respect to the actions complained of); <u>Rosario v. Miami-Dade Cnty.</u>, 490 F. Supp. 2d 1213, 1222 (S.D. Fla. 2007) ("Plaintiffs have failed to allege facts capable of supporting a finding that the unconstitutional deprivation was the result of a decision rendered by a final policymaker.").[5]

---

[5] <u>Hamilton v. City of Clayton</u>, cited by Phoenix Ridge, is consistent with the Court's position that a trial court can rule on this issue at the pleadings stage. Although the court denied the defendant's motion to dismiss, it did not rule that a district court was precluded from adjudicating the final policymaker decision on a motion to dismiss, and instead considered the motion, finding that there were no alleged "facts to suggest that the termination decision made by Defendants . . . was subject to 'meaningful administrative review' by any sort of civil service board or entity." <u>Hamilton v. City of Clayton</u>, No. 2:22-CV-194-RWS, 2022 WL 20690355, at *7 (N.D. Ga. Dec. 22, 2022).

Apart from arguing generally that this Court applied the wrong legal standard and should not have considered the final policymaker issue at the motion to dismiss stage, Phoenix Ridge does not contend that this Court's ruling that the Director and Mayor were not final policymakers was clear legal error.[6] See generally, Pl.'s Recons. Br. However, to the extent Phoenix Ridge changes its stance in its Reply Brief and apparently concedes that the Court can make this decision on a motion to dismiss, but that it was error for the Court to have done so in this case as to the Mayor,[7] see Pl.'s Recons. Reply at 5-10, the argument fails. Phoenix Ridge does not cite any legal precedent that conflicts with this Court's March 27 Order holding that the City Charter establishes that the Mayor's authority to negotiate and execute contracts is not unilateral and requires authorization from the City Council. March 27 Order at 23 (citing Atlanta City

---

[6] In fact, as stated in the March 27 Order, Phoenix Ridge failed to link the allegations about the City's inferences to any purported final decision by the Mayor as policymaker. See Mar. 27 Order at 24 n.7.

[7] Phoenix Ridge does not specifically argue that it was error to make this decision with regard to the Director. See Pl.'s Recons. Reply at 8 n. 2 ("Contrary to the City's supposition that Phoenix Ridge is conceding that the Director is not a final policymaker (Doc. 27 at 17), Phoenix Ridge has chosen not to raise the Director's status as a final policymaker in this Motion, choosing instead to press that issue on appeal, if necessary.").

Charter § 3-104(10)).  Nor does Phoenix Ridge even attempt to argue that this is an erroneous statement of the law.

### 2.   The additional legal authority does not change the Court's decision.

Phoenix Ridge asks the Court to consider additional authority it did not cite in its initial response to the motion to dismiss.  Pl.'s Recons. Br. at 5-9.  "[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion."  Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997); see also Adler, 202 F.R.D. at 675. Phoenix Ridge fails to show that these additional authorities were not available when it responded to the City's Motion to Dismiss.

Even if the Court were to consider the additional authorities presented by Phoenix Ridge, they fail to disturb this Court's previous ruling because no authority presented establishes that the Mayor had unilateral final policymaking authority with respect to breaching the Settlement Agreement or executing the proposed consent order devoid of any limitation by the City Council.  Phoenix Ridge cites Atlanta City Code § 2-404,[8] which gives the city attorney authority to

---

[8] "The city attorney shall have authority, without approval of the council, to settle all claims and suits for sums not to exceed $500.00 in each instance.  Settlement of

settle claims and suits for sums under $500, and argues that (when read in combination with Atlanta City Charter § 3-303(f)),[9] it is plausible to infer "that the Mayor of Atlanta has final policymaking authority" and "was authorized to act without City Council approval both to enter and breach the Settlement Agreement."  Pl.'s Recons. Br. at 5-9.  Similarly, Phoenix Ridge cites Atlanta City Code § 3-104(11), which indicates that the Mayor is authorized to "[r]epresent the city in affairs of intergovernmental relations, promote and improve the government of the city, encourage the growth of the city, and promote and develop the prosperity and social well-being of its people."  Phoenix Ridge then argues that this provision (read in conjunction with Administrative Order 2022-02, and City of Atlanta Ordinances 22-O-1316, 22-O-1546, and 23-O-1272 and a press release issued by the Mayor on October 26, 2022), establishes the "plausible inference that the Mayor of Atlanta has final policymaking authority over matters effecting the prosperity and social well-being of the City's people, which includes the City's development plans for Forest Cove, and that the Mayor was authorized to act

_____

claims and suits in excess of $500.00 shall first be approved by the council." Atlanta City Code § 2-404.

[9] "The city attorney shall be responsible to the mayor and to the city council." Atlanta City Charter § 3-303(f).

without City Council approval both to enter and breach the Settlement Agreement to preserve the City's development plans for Thomasville Heights, including Forest Cove." Id. at 9.

However, none of the authorities cited by Phoenix Ridge nor the arguments it raises address Atlanta City Code § 3-104(10) which lists the Mayor's "powers and duties" and unambiguously states that the Mayor has authority to "negotiate deeds, bonds, contracts, and other instruments and documents on behalf of the city" but only "[w]hen authorized by the council," and that the Mayor is authorized to execute those documents only "after final approval by the council." None of the additional Ordinances, Charter provisions, or code sections cited by Phoenix Ridge affects or qualifies this explicit limitation of the Mayor's authority, and Phoenix Ridge does not attempt to address this in its Motion for Reconsideration.

At best, the cited authorities merely demonstrate that the Mayor and other City actors may have discretion to perform tasks not as issue in this case. This inapposite discretionary authority does not relate to, let alone establish, final policymaking authority with regard to the matters alleged in the Complaint. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based

on an exercise of that discretion."); see also Payung v. Williamson, 747 F. Supp. 705, 709 (M.D. Ga. 1990) (holding that the mayor of the City of Cochran was not a final policymaker with regard to employment decisions where "[a]ll of his employment decisions were subject to review by the entire City Council.").

Finally, to the extent that Phoenix Ridge urges the Court to hold that it sufficiently alleged that the Mayor had final policymaking authority to perform the allegedly unconstitutional acts because it alleges that the Mayor did in fact enter the contract on behalf of the City (despite the explicit limitation on this power in the Atlanta City Charter), the Court finds this argument unavailing. "In this Circuit, the law is clear that 'a municipal officer does not have policymaking authority over a particular subject matter [so as to impose § 1983 liability on the municipality] when that official's decisions are subject to meaningful administrative review.'" Reed v. City of Lavonia, 390 F. Supp. 2d 1347, 1364 (M.D. Ga. 2005) (quoting Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997)) (emphasis added). Thus, even where a final policy maker delegates decision making discretion to a subordinate, municipal liability will not lie if the final policy maker "retains the power to review the exercise of that discretion." Scala, 116 F.3d at 1399. The case law is also clear that the inquiry is not whether the decision was in fact reviewed, but whether the decision was subject to

meaningful review.  See, e.g., id. at 1402 (holding that city manager was not a final policy maker with respect to the decision to terminate an employee where the city's civil service board had the authority to review the city manager's decisions); Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996) (accepting concession that police chief was not final policymaker with respect to employment decisions where police chief's decisions could be reversed by the city manager); Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 637–38 (11th Cir. 1991) (holding that mayor was not a final policymaker regarding zoning issues where the city council could override the mayor's veto of zoning ordinances); Vincent v. City of Talladega, 980 F.Supp. 410, 419 (N.D. Ala. 1997) (finding that city was not subject to liability under § 1983 where suspension decision was subject to review by the city's personnel board).  The Mayor's authority to enter contracts is explicitly subject to review by the City Council; thus, he was not a final policymaker.  Phoenix Ridge directs the Court to no authority holding otherwise.

Accordingly, Phoenix Ridge's Motion for Reconsideration is **DENIED**.

## III.  MOTION TO AMEND

Phoenix Ridge moves to vacate the March 27, 2024, Judgment and seeks leave to amend its Complaint to add sections of the Atlanta City Charter, the Atlanta City Code, and additional information on communications involving the

City that purport to "demonstrate the Mayor could sign and breach the Settlement

Agreement without the approval of the City Council." Pl.'s Mem. of Law in Supp.

of its Mot. to Vacate J. and for Leave to Am. Compl. ("Pl.'s Mot. to Am. Br.")

[Doc. 21-1]. Phoenix Ridge argues that it should be granted leave to amend its

complaint to add the legal citations because it did not previously "have an

opportunity to amend its Complaint to allege additional local positive law relevant

to the Court's consideration of whether the Mayor of Atlanta was a final

policymaker or to address the particular basis upon which the Court based its

decision through amendment." Id. at 3. Phoenix Ridge reasons that the City did

not press the argument that the Mayor was not a final policymaker until the reply

brief in response to Phoenix Ridge's opposition to the Motion to Dismiss;

consequently, "Phoenix Ridge did not have an opportunity to amend its Complaint

to allege additional local positive law relevant" to this issue. Id. at 2-3.[10]

---

[10] The Court notes that this purported procedural misstep in failing to allege this
theory of liability, or the facts to support it, or failing to amend the complaint is a
problem of Phoenix Ridge's own making. As discussed above, Phoenix Ridge did
not even mention the final policymaker theory of municipal liability until it
responded to the City's Motion to Dismiss. The City was permitted to respond to
arguments raised in Plaintiff's response brief. See, e.g., Pearson v. Fulton Cnty.,
No. 1:08-CV-3758-CAM-CCH, 2010 WL 11509071, at *1 (N.D. Ga. Feb. 26,
2010) (finding that "the Reply Brief does not raise new arguments but instead
merely responds to those arguments presented in Plaintiff's response," and thus
was permissible); Henley v. Turner Broad. Sys., Inc., 267 F. Supp. 3d 1341, 1349
(N.D. Ga. 2017) (finding that the defendants' reply "squarely responds to the

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "The Supreme Court has emphasized that leave to amend must be granted absent a specific, significant reason for denial." Spanish Broad. Sys. v. Clear Channel Commc'ns, 376 F.3d 1065, 1077 (11th Cir. 2004) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Even after a complaint is dismissed, and a plaintiff's right to amend under Rule 15(a) is terminated, a plaintiff "may still move the court for leave to amend, and such amendments should be granted liberally." Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, 724 F.2d 1552, 1556 (11th Cir. 1984) (footnote omitted).

When considering whether a reason for denial exists, the district court may consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182; see also Alexander v. AOL Time Warner, Inc., 132 F. App'x 267, 269 (11th Cir. 2005)

---

arguments in Plaintiffs' response brief, and does not advance new arguments"). And Phoenix Ridge did not seek leave to amend its Complaint prior to the Court's entry of the March 27 Order.

("Futility of amendment is a proper reason for denying a motion for leave to amend."). "A proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss." Bowers v. Am. Heart Ass'n., Inc., 513 F. Supp. 2d 1364, 1369 (N.D. Ga. 2007).

Phoenix Ridge's proposed amended complaint would add the same "locative positive law" that is the subject of its motion for reconsideration that has been denied by this Court. Pl.'s Mot. to Am. Br. at 5-11 (citing Atlanta City Charter §§ 3-303(f) and 3-104(11), Atlanta City Code § 2-404, Administrative Order 2022-02, City of Atlanta Ordinances 22-O-1316, 22-O-1546, and 23-O-1272, and a press release issued by the Mayor on October 26, 2022). Furthermore, any additional factual allegations that Phoenix Ridge seeks to add do not change the fact that the City of Atlanta did not vest the Mayor with the authority to enter into or break contracts without approval from the City Council. See Section II(B)(2), supra; see also Baker, 662 F. Supp. 3d at 1320 (concluding that the plaintiffs failed to allege that the Atlanta Police Captain was a final policymaker where the plaintiffs cited no authority to support this contention, and where the Atlanta Code of Ordinances vested final decision-making authority in the Chief of Police: "In light of the City's decision to vest this authority elsewhere, the Court concludes Plaintiffs' bare

allegations that Captain Harper was a final policymaker merely 'by virtue of his rank' does not plausibly allege that authority.").

Finally, Phoenix Ridge cites DeVillier v. Texas in what appears to be an attempt to argue that this Court has federal question subject matter jurisdiction over the state law takings claim. See Pl.'s Mot. to Am. Br. at 12-13 (citing DeVillier v. Texas, 601 U.S. 285 (2024)). Phoenix Ridge's reliance on Devillier v. Texas is misplaced. Phoenix Ridge appears to argue that this Court would have federal subject matter jurisdiction over the state inverse condemnation claim because it "arises under" the Fifth Amendment of the United States Constitution. In Devillier, the plaintiff sued the State of Texas asserting inverse-condemnation claims under both the Texas Constitution and the Takings Clause of the Fifth Amendment. Devillier, 601 U.S. at 289-90. Notably, the plaintiff could not have used Section 1983 as the "vehicle" to assert constitutional violations because Section 1983 does not authorize claims against a State. Id. at 942-43. The precise issue before the Supreme Court was "whether a property owner may sue for just compensation directly under the Takings Clause." Id. at 290. However, the Court found that answering the question of whether the Fifth Amendment creates a cause of action for damages was not necessary because "constitutional concerns do not arise when property owners have other ways to seek just

compensation." Id. at 292. Specifically, the Supreme Court found that Texas "state-law inverse-condemnation cause of action provides a vehicle for taking claims based on both the Texas Constitution and the Takings Clause."

Devillier does not apply here. The Supreme Court held that, in the absence of any other vehicle through which to bring a Takings Clause claim, a state-law inverse-condemnation claim was a proper vehicle. Id. at 293. The plaintiff in Devillier could not have relied on Section 1983 for a cause of action because the state actor at issue was the State of Texas itself; here, Phoenix Ridge could, and did, bring its constitutional claim pursuant to Section 1983 against the City. "This case therefore does not present the circumstance in which a property owner has no cause of action to seek just compensation," because a cause of action was created through Section 1983.

Accordingly, the Court Phoenix Ridge's Motion to Vacate Judgment and for Leave to Amend the Complaint is **DENIED** as futile. See CMR Constr. & Roofing, LLC v. UCMS, LLC, No. 21-11183, 2022 WL 3012298, at *8 (11th Cir. July 29, 2022) (holding that post-judgment motion to amend should be denied when based on the same theories as motions for reconsideration that were denied).

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff Phoenix

Ridge GA TC, LP's Motion for Reconsideration [Doc. 20] and Motion to Vacate

Judgment and for Leave to Amend Complaint [Doc. 21] are **DENIED**.

**IT IS SO ORDERED** this 6th day of August, 2024.

_____
MARK H. COHEN
United States District Judge